**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **VANESSA GORDON,** individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>**THE VANDERBILT UNIVERSITY,**<br>Defendant. | Case No. ____________________<br>**CLASS ACTION COMPLAINT**<br>**JURY DEMAND** |

Plaintiff Vanessa Gordon, individually and on behalf of all others similarly situated, alleges the following against Defendant Vanderbilt University, based on personal knowledge as to her own circumstances and on information and belief as to other matters, including counsel's review of the identified public records and disclosures:

## NATURE OF THE ACTION

1. Vanderbilt University required Vanessa Gordon and its other employees to entrust it with personal information to administer their employment. Vanderbilt controlled the records, the systems that held them, and the safeguards that protected them. Employees had to rely on Vanderbilt to keep that information secure.

2. Vanderbilt understood the stakes. Its own policies classify employee identifiers, payroll records, and personnel information as restricted and call for heightened protection. Its security program identifies the controls needed to limit access, separate sensitive records, and detect unauthorized activity.

3. On November 9, 2026, Vanderbilt announced a cyberattack affecting university devices, systems, and cloud services (the "Data Breach"). It directed the university community to shut down devices and disconnect from campus Wi-Fi. A ransomware group claimed that it had obtained student and employee records, including more than one million Social Security numbers.

Vanderbilt later required every university account holder to change passwords while it investigated the extent of the intrusion.

4. On information and belief, Vanderbilt failed to enforce the access restrictions, separation of sensitive records, and monitoring needed to protect the information in its custody. Those failures allowed intruders to reach information that employees and others had entrusted to Vanderbilt. Given Vanderbilt's knowledge of the risks and control over the safeguards, the failures alleged below constituted gross negligence.

5. In March 2026, Vanderbilt University Medical Center experienced a phishing breach involving an employee email account. Vanderbilt continued to supply IT support to the Medical Center under a formal services agreement. On information and belief, the University knew of that incident through its shared IT functions and the ensuing public disclosure. It had months to review and enforce the safeguards protecting its own sensitive records before the November attack.

6. Upon information and belief, Plaintiff's and Class Members' Private Information is in the hands of cybercriminals who will continue to use the stolen Private Information for nefarious purposes for the rest of their lives.

7. Due to Defendant's negligent failure to secure and protect Plaintiff's and Class Members' Private Information, cybercriminals have stolen and obtained everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals.

8. Now, and for the rest of their lives, Plaintiff and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Private Information. Even those Class Members who have yet to experience identity theft will have to spend time responding

to the Data Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach.

9. Plaintiff and Class Members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, diminution of the value of their Private Information, loss of privacy, and additional damages as described below.

10. Gordon brings this action to recover the losses caused by the exposure of her information and to require effective protection of information Vanderbilt continues to hold. She asserts negligence, including gross negligence, for a nationwide class and breach of implied contract and, in the alternative, unjust enrichment for an employee subclass.

## PARTIES

11. Plaintiff Vanessa Gordon is a citizen of Tennessee, resides in Davidson County, Tennessee, and is a current employee of Vanderbilt University. Vanderbilt collected and retained her personal information through that employment relationship.

12. Defendant Vanderbilt University ("Vanderbilt") is a private, nonprofit corporation organized under Tennessee law with its principal place of business in Nashville, Davidson County, Tennessee.[1]

13. Vanderbilt determines what personal information it collects for its operations, how long it retains that information, and who may access it. Vanderbilt is responsible for protecting information in its custody, including information stored in systems operated on its behalf.

---

[1] Vanderbilt Univ., *Code of Bylaws* 13–16 (Oct. 25, 2024), https://www.vanderbilt.edu/wp-content/uploads/sites/3/2024/12/code-of-bylaws-approved-10-25-2024.pdf.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), (5)(B), and (6). The proposed Class has at least 100 members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one Class member is a citizen of a state different from Vanderbilt.

15. Vanderbilt is a citizen of Tennessee under 28 U.S.C. § 1332(c)(1). On information and belief, the nationwide Class includes current and former students and employees who are citizens of Tennessee and other states. Minimal diversity therefore exists notwithstanding Gordon's Tennessee citizenship.

16. On information and belief, the intrusion affected records concerning many thousands of individuals. Their aggregated claims for compensatory damages, protection and recovery expenses, and other available relief exceed $5,000,000. Vanderbilt's records and forensic investigation will identify the affected population and information.

17. The Court has personal jurisdiction over Vanderbilt because it is incorporated in Tennessee and maintains its principal place of business in this District. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Vanderbilt resides here and a substantial part of the acts and omissions giving rise to these claims occurred here. The Nashville Division is proper because Vanderbilt's principal place of business and Gordon's residence are in Davidson County. *See* 28 U.S.C. § 123(b)(1).

## FACTUAL ALLEGATIONS

### Vanderbilt required and controlled sensitive employee information

18. To employ and pay its workforce, Vanderbilt collects information needed to identify employees, report taxes, administer benefits, and maintain personnel records. Vanderbilt selects the systems that hold those records and controls access to them.

19. Vanderbilt's Privacy Policy expressly covers faculty and staff information, including biographic, remuneration, benefits, family, and work-performance information. The policy describes safeguards proportionate to the information's sensitivity, limits on access, and protection against unauthorized use. It also recognizes that Vanderbilt stores information in cloud infrastructure and with third parties.[2]

20. Vanderbilt directs employees to use Oracle to update addresses, telephone numbers, emergency contacts, tax forms, and direct-deposit information. It also prescribes a process for submitting Social Security or taxpayer-identification number changes and supporting documents.[3]

21. Vanderbilt's Employment Data Domain identifies national identification numbers and dates of birth as Level 3 Restricted information. It likewise classifies payroll, personnel-profile, leave, and time-and-labor records as restricted. The university's published inventory identifies Oracle and a Snowflake warehouse as systems used for several of these functions.[4]

22. Employees provide this information for limited employment purposes. Vanderbilt accepts and uses it to perform those functions. That exchange carries the reasonable and mutual understanding that Vanderbilt will preserve the information's confidentiality through reasonable safeguards.

23. Providing information to Vanderbilt did not give employees authority to set the safeguards governing its collection, retention, or protection. Vanderbilt controls those protections. The people whose identities are recorded in the systems depend on Vanderbilt to enforce them.

---

[2] Vanderbilt Univ., *Privacy Policy* (Mar. 6, 2025), https://www.vanderbilt.edu/privacy/.

[3] Vanderbilt Univ., *Changes to Records*, https://hr.vanderbilt.edu/payroll-information/records-changes/ (last visited Nov. 13, 2026).

[4] Vanderbilt Univ., *Employment Data Domain*, https://www.vanderbilt.edu/data/data-domains/employment-data/ (last visited Nov. 13, 2026).

**Vanderbilt recognized the risk and the protections it required**

24. Vanderbilt's Data Classification Policy applies to information in its custody, including information in external or cloud systems and on devices used on its behalf. The policy requires personally identifiable information to receive at least Level 3 Restricted treatment and describes that category as requiring a high level of security.[5]

25. The policy assigns oversight and accountability for classification, inventory, and appropriate security to university leadership and designated data owners. Before the intrusion, Vanderbilt had therefore identified the sensitive records, the need for heightened protection, and the officials responsible for that protection.

26. Vanderbilt's security-policy index identifies multifactor authentication, least-privilege access, network segmentation, encryption, logging and monitoring, endpoint detection, vulnerability remediation, and recovery testing as elements of its security program.[6]

27. These controls address a concrete and foreseeable danger: compromise of an account or device can give an intruder a path to other systems and sensitive records. Limiting privileges, separating restricted data, and detecting unusual access can stop that progression or limit its reach.

28. The risk was particularly serious for employee records. Persistent identifiers combined with payroll and personnel information can be used to impersonate employees, attempt account access, and commit financial or employment fraud. Vanderbilt's own classifications recognized the need to protect those records against unauthorized access.

---

[5] Vanderbilt Univ., *Data Classification Policy* 1–3, 5 (May 11, 2020), https://cdn.vanderbilt.edu/vu-URL/wp-content/uploads/sites/352/2021/03/19225810/Data-Classification-Policy-05.11.2020.pdf.

[6] Vanderbilt Univ., *Security Policies*, https://www.vanderbilt.edu/cybersecurity/policies/ (last visited Nov. 13, 2026).

**The March 2026 VUMC breach gave Vanderbilt a specific warning**

29. Vanderbilt University Medical Center ("VUMC") experienced a phishing breach months before the Data Breach. VUMC stated that it discovered the compromise on March 27, 2026, after an employee clicked a malicious email link. Its investigation determined that an unauthorized person had accessed documents in the employee's email account on March 23, 2026.[7]

30. VUMC reported the incident to the U.S. Department of Health and Human Services as an email-related hacking incident affecting 3,298 individuals. The report was submitted on July 24, 2026. VUMC's public disclosure identified potentially affected patient information and announced enhanced email and digital security and additional employee cybersecurity training.[8]

31. Vanderbilt's connection to that incident extends beyond a common name. In its own 2026 Financial Report, issued September 30, 2026 and published in October, the University confirmed that it continued providing IT support to VUMC under the parties' Master Service Agreement. The report describes an ongoing exchange of specified services for agreed consideration.[9]

32. Other institutional records document the technical relationship. VUMC announced in February 2025 that it would migrate departmental shared drives to VUMC-owned locations in batches through July 2026 as part of its separation from the University. Current instructions for

---

[7] Kassidy Brown, *Vanderbilt Health Says Patient Data Possibly Exposed After Employee Clicks Malicious Link*, WSMV4 (July 24, 2026), https://www.wsmv.com/2026/07/24/vanderbilt-health-says-patient-data-possibly-exposed-after-employee-clicks-malicious-link/.

[8] U.S. Dep't of Health & Hum. Servs., Off. for C.R., *Breach Portal: Notice to the Secretary of HHS Breach of Unsecured Protected Health Information*, https://ocrportal.hhs.gov/ocr/breach/breach_report_hip.jsf (last visited Nov. 13, 2026) (Vanderbilt University Medical Center entry, submitted July 24, 2026); Brown, *supra* note 7.

[9] Vanderbilt Univ., *2026 Financial Report* 42 (2026), https://cdn.vanderbilt.edu/vu-sub/wp-content/uploads/sites/291/2026/10/01133439/2026_VU_Financial_Report.pdf.

University personnel using VUMC's DISCOVR-e application require registration of their University Microsoft accounts within VUMC's Microsoft tenant.[10]

33. On information and belief, the University and VUMC share IT-department resources and support personnel for the services covered by these continuing arrangements, including University personnel providing IT support used by VUMC. This allegation concerns shared functions, resources, and personnel within the institutions' continuing services relationship; the University and VUMC are separate legal entities.

34. On information and belief, Vanderbilt's IT and security personnel were aware of the March 2026 breach through those ongoing IT-support functions and the July 2026 public disclosure. An intrusion through an employee account had already exposed nonpublic records at the institution to which Vanderbilt supplied IT support. Vanderbilt had more than three months after the public disclosure to assess the implications for its own accounts, privileged access, and sensitive repositories.

35. The warning was specific. On March 13, 2026, VUMC had publicly alerted its workforce to deceptive IT-support requests, spoofed email, fake login pages, malicious attachments, and fraudulent multifactor-authentication prompts. The email compromise later that month demonstrated the risk those warnings addressed.[11]

---

[10] Vanderbilt Univ. Med. Ctr., *ExpeditionTech Migrating Department Shared Drives*, Vanderbilt Health News (Feb. 7, 2025), https://news.vumc.org/2025/02/07/expeditiontech-to-begin-migrating-department-shared-drives/; Vanderbilt Univ. Med. Ctr., *Vanderbilt University Registration Instructions*, https://irb.app.vumc.org/vu-authentication-instructions (last visited Nov. 13, 2026).

[11] Vanderbilt Univ. Med. Ctr., *At This Time of Heightened Security Concerns, It's Vital for All Employees to Be Vigilant About Phishing and Other Scams*, Vanderbilt Health News (Mar. 13, 2026), https://news.vumc.org/2026/03/13/at-this-time-of-heightened-security-concerns-its-vital-for-all-employees-to-be-vigilant-about-phishing-and-other-scams/.

36. The March incident made unauthorized access through a trusted account a concrete and foreseeable danger within Vanderbilt's IT-services relationship. It called for review of account protections, access privileges, technical connections, and detection of abnormal activity. The precise entry point of the November attack remains under investigation; the March incident supplied advance warning of the risk that an account or device compromise could expose sensitive records.

**The November attack compromised devices and threatened employee records**

37. At approximately 10:45 a.m. on November 9, 2026, Vanderbilt announced an active cybersecurity incident potentially affecting university devices, systems, and cloud services. It instructed the university community to shut down university devices and disconnect from campus Wi-Fi. Wi-Fi returned later that day, but access to most university systems remained restricted.[12]

38. The disruption was visible at the device level. The Nashville Scene reported firsthand accounts of problems when University personnel logged in that morning. One person described an unexpected apparent VUIT update that rewrote files with a ".byod" extension. Another reported losing access to research work.[13]

39. That day, the ransomware group identifying itself as BYOD claimed responsibility and posted a Vanderbilt-specific entry on its extortion site. It claimed to have locked databases and obtained more than one million Social Security numbers, names, contact information, and

[12] Vanderbilt Univ., *Active Cybersecurity Incident Updates* (Nov. 9, 2026) (including subsequent updates), https://news.vanderbilt.edu/2026/11/09/nov-9-active-cybersecurity-incident-updates/ (last visited Nov. 13, 2026).

[13] Eli Motycka, *Ransomware Attack Puts Vanderbilt on Lockdown*, Nashville Scene (Nov. 9, 2026), https://www.nashvillescene.com/news/pithinthewind/vanderbilt-university-cyber-attack-lockdown/article_c7136f1f-a103-4e75-93bc-826ca02e894e.html.

student and employee records, as well as broad control over the University's network. The screenshot published in contemporaneous reporting is reproduced below.[14]




40. BleepingComputer also obtained and published a photograph of a Vanderbilt-associated computer displaying a ransom note named README_BYOD_31.txt. The note claimed possession of student and employee information and backups and threatened publication of data and further disruption. The photograph shows multiple ransom-note files on the desktop. The published photograph is reproduced below.[15]




[14] Lawrence Abrams, *Vanderbilt University Hit in BYOD Ransomware Attack, Data Theft Claimed*, BleepingComputer (Nov. 9, 2026), https://www.bleepingcomputer.com/news/security/vanderbilt-university-hit-in-byod-ransomware-attack-data-theft-claimed/.

[15] Abrams, *supra* note 14.

41. The reporter verified that the link in the photographed note led to BYOD's site and also obtained a video of an audio compromise warning. These materials document the specific demand and claimed possession of employee records. The University's own subsequent confirmation of compromised devices corroborates an intrusion, while the quantity and contents of the claimed data theft remain under investigation.

42. On November 10 and 11, Vanderbilt described continuing containment efforts and warned that full restoration could take multiple weeks. It prioritized payroll, payment services, admissions, registration, and public safety and reported working with government agencies, law enforcement, and outside partners.[16]

43. Vanderbilt expressly confirmed that devices exhibiting suspicious activity such as audio pop-ups were compromised and should be shut down and reported. Its incident FAQ described assessments of compromised employee devices and the acquisition of replacement and loaner laptops. The FAQ also identified Snowflake, a platform Vanderbilt's own inventory associates with employment data, as disabled.[17]

44. By November 13, Vanderbilt required every University account holder to reset the account password. The requirement extended to employees and to account holders away from the Nashville campus. This response addressed accounts throughout the University environment.[18]

45. In its November 13, 11:50 a.m. update, Vanderbilt reported that most systems and applications, including Oracle and Salesforce, were available again. Box, OneDrive, and

---

[16] Vanderbilt Univ., *Active Cybersecurity Incident Updates*, *supra* note 12 (Nov. 10–11, 2026 updates).

[17] Vanderbilt Univ., *Cybersecurity Incident FAQs*, https://news.vanderbilt.edu/cybersecurity-incident-faqs/ (last visited Nov. 13, 2026).

[18] Vanderbilt Univ., *Active Cybersecurity Incident Updates*, *supra* note 12 (Nov. 13, 2026 password-reset instructions).

SharePoint remained disabled. Users could save files locally but could not save them to or retrieve them from those cloud services. Vanderbilt continued to describe an ongoing cyberattack.[19]

46. Vanderbilt thus had actual knowledge of the November incident by its November 9 alert and later acknowledged compromised devices. As of November 13, it was still determining what data had been accessed and had not publicly identified the complete affected population or data categories. Gordon alleges unauthorized access and acquisition on information and belief based on the intrusion, the specific claim concerning employee records, and the circumstances concerning her information set out below.[20]

47. The records needed to determine the intrusion's full scope are within Vanderbilt's possession or control. They include access and transfer logs, affected-system inventories, privilege assignments, endpoint alerts, and forensic findings identifying which records the intruders reached.

**Reasonable safeguards could have prevented the exposure**

48. The protective measures available before this attack were established and addressed the risks Vanderbilt already recognized. Joint federal guidance published in October 2023 recommended phishing-resistant multifactor authentication, with priority for administrator and other privileged accounts; monitoring of abnormal activity and failed authentication; restriction of administrative rights; and prompt isolation and remediation of compromised accounts and devices.[21]

---

[19] Vanderbilt Univ., *Active Cybersecurity Incident Updates*, *supra* note 12 (Nov. 13, 2026, 11:50 a.m. update).

[20] Vanderbilt Univ., *Cybersecurity Incident FAQs*, *supra* note 17; Vanderbilt Univ., *Active Cybersecurity Incident Updates*, *supra* note 12 (Nov. 10, 2026, 6 p.m. update).

[21] Cybersecurity & Infrastructure Sec. Agency et al., *Phishing Guidance: Stopping the Attack Cycle at Phase One* 6–8, 11 (Oct. 2023), https://www.ic3.gov/CSA/2023/231018.pdf.

49. Vanderbilt's own security program identified the corresponding controls: least-privilege access, network segmentation and isolation, protection of restricted data, logging and monitoring, endpoint detection, vulnerability remediation, and threat intelligence. Those controls were designed to prevent an initial foothold from becoming access to sensitive repositories or control of additional devices.[22]

50. On information and belief, before the Data Breach Vanderbilt failed to enforce effective restrictions on access to sensitive records. It allowed privileges beyond legitimate needs, failed to isolate restricted information from compromised accounts or systems, and failed to detect and interrupt unauthorized activity before the information was exposed.

51. These failures are alleged on information and belief from the reported rewriting of files, the ransom materials placed on University-associated devices, the attacker's specific claim of access to employee records and network administration, and Vanderbilt's confirmation of compromised devices. They are also informed by Vanderbilt's inventory of restricted data, its published safeguards, and the March warning within its IT-services relationship. The precise entry point, accounts used, and duration of access are matters for forensic evidence and discovery.

52. Effective account and privilege controls would have limited the systems and records available through a compromised credential. Protecting administrator accounts and separating ordinary user access from administrative access would have restricted an intruder's ability to expand control beyond an initial account or device.

53. Effective segmentation and separate authorization for restricted repositories would have blocked or limited movement from a compromised account or device to payroll and personnel records. Enforcing those boundaries before the intrusion would have prevented the alleged access

---

[22] Vanderbilt Univ., *Security Policies*, *supra* note 6.

to information outside the compromised user's legitimate needs or materially limited the information exposed.

54. Effective monitoring and endpoint controls would have identified and interrupted abnormal account use, unauthorized administrative activity, mass file changes, or unusual access and transfers from sensitive repositories. Prompt containment at those points would have restricted the intruders' reach and the amount of information they could acquire.

55. Vanderbilt had the information, responsibility, and opportunity to enforce those protections before November 9. Its policies identified the sensitive data and assigned security accountability; its IT-services relationship provided a specific prior warning; and established guidance identified practical controls. On information and belief, Vanderbilt nevertheless continued maintaining restricted employee records under the deficient conditions alleged above.

56. The alleged failures therefore concern the continued exposure of known, sensitive records to a known danger. Failing to enforce the identified safeguards after those warnings reflected reckless disregard for the people whose information Vanderbilt held and conscious indifference to the consequences.

57. The gross negligence alleged here preceded and caused the Data Breach within the meaning of Tenn. Code Ann. § 29-34-215(b). Enforcing the protections described above would have prevented the alleged unauthorized access and acquisition or materially limited its scope. The same conduct and causal allegations support all counts. Criminal intrusion was the foreseeable risk the safeguards were required to address.

**Gordon's information was exposed and her household experienced attempted fraud**

58. Vanderbilt required Gordon to provide personal information, including her Social Security number, to administer her employment. Vanderbilt accepted and retained that information for those purposes.

59. Plaintiff places significant value in the security of her Private Information and does not readily disclose it. Plaintiff entrusted Defendant with her Private Information with the understanding that Defendant would keep his information secure and would employ reasonable and adequate data security measures to ensure that her Private Information would not be compromised.

60. On information and belief, unauthorized persons accessed or acquired Gordon's nonpublic information during the Data Breach. She did not authorize its disclosure. The intrusion deprived her of the confidentiality of information she had provided to Vanderbilt for employment purposes.

61. During the week of November 9, 2026, attempted fraudulent loan activity affected Gordon's household. During the same week, her household also experienced other suspicious activity, including significant spam.

62. In light of that timing, Vanderbilt's retention of Gordon's Social Security number, and the attackers' reported claim to have obtained employee records, Gordon alleges on information and belief that this activity is connected to the Data Breach.

63. In response to the exposure, Gordon has spent time taking protective measures, including contacting credit bureaus to place freezes on her accounts, changing passwords and securing her own computer networks, and checking her financial accounts for fraudulent activity. She will continue to spend time on those measures because misuse may emerge after the initial intrusion.

64. Gordon remains a Vanderbilt employee. Vanderbilt continues to retain and use her employment information, and she must continue providing or updating information required for that relationship. She seeks relief addressing the continuing safeguarding deficiencies alleged above and the protection of information Vanderbilt retains.

65. Vanderbilt's failures exposed Gordon's information and required her to spend time and resources responding. Compensation will redress her recoverable losses. Appropriate prospective relief will protect retained information against the continuing risks established in this action.

66. Knowing that thieves intentionally targeted and accessed her Private Information, has caused Plaintiff great anxiety beyond mere worry.

67. Plaintiff has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source

68. As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (i) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (ii) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (iii) loss of the benefit of his bargain because Defendant did not adequately protect her Private Information; (iv) emotional distress because identity thieves now possess her Private Information; (v) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen in the Data Breach; (vi) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff ; and (vii) other economic and non-economic harm.

69. Plaintiff has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for ***years*** to come. This risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information stolen in the Data Breach

70. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in the possession of Defendant, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff 's Private Information will be wholly unprotected and at-risk of future data breaches.

**The exposure has consequences beyond restoring university systems**

71. Restoring access to university applications does not restore the secrecy of information acquired by an intruder. A password can be reset; a stolen Social Security number and an acquired personnel record can remain useful for impersonation and fraud long after systems return to service.

72. The reasonable response depends on the information exposed. It can require securing accounts, reviewing financial and identity records, contacting affected institutions, and obtaining protection or restoration services. Gordon and Class members seek the actual losses and reasonable protection expenses caused by the exposure, including reasonably certain future costs where recoverable.

73. Vanderbilt controls the information needed to identify affected records and the systems that continue to hold them. Effective relief requires accurate disclosure of the affected information, correction of the established security failures, and protection proportionate to the data and risks involved.

## CLASS ACTION ALLEGATIONS

74. Gordon brings this action under Fed. R. Civ. P. 23(a) and (b)(3), and seeks prospective relief under Rule 23(b)(2), on behalf of the following Class:

> Nationwide Class: All individuals in the United States whose nonpublic personal information was accessed or acquired without authorization in the cybersecurity incident Vanderbilt University publicly disclosed on November 9, 2026.

75. For the implied-contract and alternative unjust-enrichment claims, Gordon also seeks to represent the following subclass under Fed. R. Civ. P. 23(c)(5):

> Employee Subclass: All members of the Nationwide Class who were required to provide the affected information to Vanderbilt University as a condition of, or to administer, their current or former employment by the university.

76. Excluded are Vanderbilt; its officers, directors, and trustees; the judges assigned to this action and their immediate families; and persons who timely and validly request exclusion from a class certified under Rule 23(b)(3). Ordinary employment by Vanderbilt does not exclude an individual.

77. The Class and Employee Subclass are defined by objective facts. Vanderbilt's records, affected-data review, and forensic evidence will identify the people whose information was accessed and the employment relationship through which Vanderbilt obtained it. Gordon may refine the definitions as those records become available.

78. Numerosity. On information and belief, the Class and Employee Subclass each include substantially more than 100 members. Vanderbilt's own 2026 Financial Report identifies 7,614 faculty and staff and 13,586 enrolled students for 2025–2026. The intrusion concerned

systems holding current and former members' records and reportedly reached extensive student and employee information.[23] Joinder of all affected individuals is impracticable.

79. Commonality. Common questions include which records were accessed; whether Vanderbilt enforced reasonable safeguards; whether its conduct constituted gross negligence; whether those failures caused the exposure; and which common protective measures are required. The Employee Subclass also presents common questions concerning Vanderbilt's requirement that employees provide information, the resulting agreement to safeguard it, Vanderbilt's breach, and the benefits Vanderbilt unjustly retained through the same conduct.

80. Typicality. Gordon's claims arise from the same intrusion and alleged security failures as the Class's claims. Her contract and alternative restitution claims arise from the same required disclosure and University use of employee information. Differences in the data exposed or the amount of loss do not alter the common course of conduct at issue.

81. Adequacy. Gordon will fairly and adequately protect the Class and Employee Subclass. She seeks compensation and effective protection of retained information, and her interests align with theirs. She has retained counsel experienced in data-breach and complex class litigation who will prosecute the claims vigorously.

82. Predominance. Vanderbilt's system architecture, access controls, security practices, and employee-information practices can be proved through common evidence. Those issues predominate over individual loss calculations. Material differences can be addressed through subclasses or issue certification under Fed. R. Civ. P. 23(c)(4).

83. Gordon asserts Tennessee law because the challenged conduct concerns a Tennessee institution's collection and protection of information through operations directed from

---

[23] Vanderbilt Univ., *2026 Financial Report*, *supra* note 9, at 4.

Tennessee. Any material differences in applicable law can be addressed through appropriate class limitations or groupings at certification.

84. Superiority. Separate actions would repeatedly examine the same systems and institutional decisions at costs disproportionate to many individual claims. Class treatment permits common proof and consistent adjudication while preserving procedures for individual damages.

85. Prospective relief. Vanderbilt's continued custody of affected information and common safeguarding practices warrant relief directed to the Class or an appropriate group whose information remains at risk. Gordon seeks monetary relief under Rule 23(b)(3), with the notice and exclusion rights that rule requires.

## COUNT I
## NEGLIGENCE INCLUDING GROSS NEGLIGENCE

On behalf of Gordon and the Nationwide Class

86. Gordon incorporates paragraphs 1 through 85.

87. Vanderbilt owed Gordon and Class members a duty to use reasonable care to protect the nonpublic information it collected, retained, and used against foreseeable unauthorized access, acquisition, and disclosure.

88. That duty arose from Vanderbilt's undertaking to collect and maintain the information, its control over the records and safeguards, and the foreseeable harm from exposing sensitive identifiers and employment records. The risk was known, and Vanderbilt was positioned to reduce it.

89. Reasonable care required effective restrictions on access, protection of privileged accounts, separation of restricted records, and detection and containment of unauthorized activity. Vanderbilt breached its duty through the failures alleged in paragraphs 46 through 53.

90. Those failures constituted gross negligence. Vanderbilt recognized the need for heightened protection but maintained sensitive information under the deficient conditions alleged above. Its disregard of the known risk reflected conscious indifference to the consequences.

91. Vanderbilt's gross negligence caused the cybersecurity event and the resulting exposure within the meaning of Tenn. Code Ann. § 29-34-215(b). Reasonable access limits and separation would have prevented intruders from reaching the information or materially restricted their reach; effective detection and containment would have interrupted the unauthorized activity.

92. The intrusion and resulting need for protective measures were foreseeable consequences of those failures. The attackers exploited the very risk Vanderbilt's duty required it to address.

93. As a direct and proximate result, Gordon and Class members suffered the injuries described above, including recoverable protection and recovery expenses and other actual losses. They are entitled to compensatory damages, appropriate equitable relief, and punitive damages upon the showing required by Tennessee law.

**COUNT II**

**BREACH OF IMPLIED CONTRACT**

On behalf of Gordon and the Employee Subclass

94. Gordon incorporates paragraphs 1 through 85, including the gross-negligence and causation allegations in paragraphs 48 through 57.

95. Vanderbilt required Gordon and Employee Subclass members to provide nonpublic personal information to establish and administer employment. They furnished the information, and Vanderbilt accepted and used it for payroll, tax, benefits, and personnel purposes.

96. Through that exchange, the parties formed an implied-in-fact agreement that Vanderbilt would use reasonable safeguards and limit access to authorized employment purposes.

Vanderbilt's requests, its acceptance and continued use of the information, and the confidential nature of the records establish the agreement.

97. The exchange supplied consideration. Employees furnished information Vanderbilt needed to administer their employment, and Vanderbilt undertook to receive and use it with reasonable protection. Gordon and Employee Subclass members performed by providing the required information.

98. Vanderbilt breached the agreement by failing to enforce reasonable access restrictions and protections for the systems holding that information. Those failures permitted unauthorized access and acquisition. The same gross negligence alleged above caused the cybersecurity event for purposes of Tenn. Code Ann. § 29-34-215(b).

99. The resulting exposure and reasonable costs of protection and recovery were foreseeable when Vanderbilt required and accepted the information. Its breach caused the injuries described above.

100. Gordon and Employee Subclass members are entitled to compensatory and consequential damages, nominal damages where legally available, and appropriate equitable relief, without duplicative recovery.

**COUNT III**

**UNJUST ENRICHMENT**

On behalf of Gordon and the Employee Subclass

101. Gordon incorporates paragraphs 1 through 85, including the gross-negligence and causation allegations in paragraphs 48 through 57.

102. Gordon pleads this claim in the alternative under Fed. R. Civ. P. 8(d)(2)–(3), to the extent no enforceable contract governs Vanderbilt's receipt, use, and protection of the information at issue.

103. Gordon and Employee Subclass members conferred benefits on Vanderbilt by furnishing, at its request, the identifying, payroll, tax, benefits, and personnel information it required to administer their employment. Vanderbilt obtained and used that information to operate its workforce, meet its administrative obligations, and maintain its employment records. Those uses provided Vanderbilt with measurable administrative and economic benefits.

104. Vanderbilt knowingly accepted and appreciated those benefits. It required the information, prescribed how employees submitted it, retained it in University systems, and continued using it throughout the employment relationship. Its privacy policies and restricted-data classifications recognized that the information was entrusted for limited purposes and required reasonable protection.

105. On information and belief, Vanderbilt retained the benefits of collecting and using that information while avoiding expenditures necessary to enforce reasonable access restrictions, separate restricted records, and detect unauthorized activity. The deficiencies described above allowed Vanderbilt to obtain the operational benefits of maintaining sensitive employee information without bearing the full, reasonable cost of protecting it.

106. Retention of those benefits was unjust. Gordon and Employee Subclass members furnished their information for legitimate employment administration under circumstances requiring reasonable safeguards. Vanderbilt's failure to provide those safeguards exposed the information and shifted the resulting protection and recovery burdens to the employees. Equity requires restitution of the portion of the benefits Vanderbilt retained at their expense through that failure.

107. The misconduct supporting this claim preceded and caused the cybersecurity event. Vanderbilt's gross negligence in maintaining restricted information under the deficient conditions

alleged above enabled the unauthorized access and acquisition. The same allegations therefore satisfy the predicate for class-action liability under Tenn. Code Ann. § 29-34-215(b) for this claim.

108. Gordon and Employee Subclass members seek restitution of benefits Vanderbilt unjustly retained at their expense, including proven savings attributable to its failure to protect the entrusted information, in an amount established through Vanderbilt's records and other evidence. Recovery is measured by Vanderbilt's unjust enrichment, without duplicative recovery under another count.

## PRAYER FOR RELIEF

WHEREFORE, Gordon, individually and on behalf of the Class and Employee Subclass, requests judgment against Vanderbilt as follows:

A. Certifying the Class and Employee Subclass under Fed. R. Civ. P. 23, appointing Gordon as class representative and her counsel as class counsel, and directing appropriate notice;

B. Awarding compensatory damages for the losses caused by the Data Breach, including reasonable protection and recovery expenses;

C. Awarding consequential and nominal contract damages to the extent legally available, without duplicative recovery;

D. Awarding restitution of benefits Vanderbilt unjustly retained at Gordon's and the Employee Subclass's expense, without duplicative recovery;

E. Awarding punitive damages on Count I upon clear and convincing proof satisfying Tenn. Code Ann. § 29-39-104;

F. Declaring Vanderbilt's obligations to protect affected information it continues to retain, as necessary to resolve the ongoing controversy;

G. Ordering appropriate prospective relief, including an independent assessment of relevant safeguards, correction of established access-control and monitoring deficiencies, separation of restricted information, and verification of remediation on a defined schedule;

H. Requiring accurate, individualized disclosure of affected information and reasonable identity-protection and restoration services proportionate to the data and risks established;

I. Awarding costs and attorneys' fees to the extent authorized by law, including an applicable common-fund or other equitable basis;

J. Awarding prejudgment and postjudgment interest as permitted by law; and

K. Granting all other relief the Court deems just and proper.

## JURY DEMAND

Under Fed. R. Civ. P. 38, Gordon demands a trial by jury on all issues so triable.

Dated: November 16, 2026

Respectfully submitted,

_/s/: Alexandra M. Honeycutt_
Alexandra M. Honeycutt (Bar No. 039617)
**MILBERG, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
ahoneycutt@milberg.com

William B. Federman (*pro hac vice* forthcoming)
Jessica A. Wilkes (*pro hac vice* forthcoming)
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
jaw@federmanlaw.com

Nicholas Andrew Hall (*pro hac vice* forthcoming)
**HALL ATTORNEYS, P.C.**
P.O. Box 1370
Edna, Texas 77957
Telephone: (713) 428-8967
nhall@hallattorneys.com

*Attorneys for Plaintiff and the Proposed Class*